UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK GORGE,
d/b/a MARK GORGE AND ASSOCIATES,
    Plaintiff/Counter-Defendant,

v.                                                      Case Number: 10-11474
                                                         Honorable Denise Page Hood

RAPID ADVANCE LLC,
a Maryland limited liability company,
    Defendant/Counter-Plaintiff

and

RAPID FINANCIAL SERVICES, LLC,
d/b/a RAPID ADVANCE,
a Delaware limited liability company,
    Defendant.

           Respondent.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

**I.    INTRODUCTION**

This matter is before the Court on Defendant Rapid Financial Services, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) **[Docket No. 5, filed on April 20, 2010]**.  Plaintiff filed a response on May 11, 2010 **[Docket No. 8]**, to which Defendant replied **[Docket No. 11, filed on May 25, 2010]**.

**II.    STATEMENT OF FACTS**

Defendant Rapid Financial is a Delaware limited liability company providing alternative financing to businesses.  On June 16, 2006, Plaintiff Mark Gorge entered into a contract with former Defendant Rapid Advance, LLC.[1]  Pursuant to this contract, Plaintiff was to receive an

---

[1] A default judgment was entered against Rapid Advance, LLC on December 13, 2010.

hourly fee of $125 for consulting services provided to Rapid Advance; 2% of net revenue generated as a result of Plaintiff's marketing of Rapid Advance's services; and an undefined fee for all merchants that sold future credit card sales to Rapid Advance based upon Plaintiff's efforts. (Amended Complaint ¶ 10). Plaintiff referred a colleague, Mr. Edward Puerto, to Jeremy Brown, President and CEO of Rapid Advance. Rapid Advance executed a contract with Mr. Puerto, and Mr. Puerto began selling products for Rapid Finance. Payments were made to Mr. Puerto and Plaintiff for sales made by Mr. Puerto's Sales Channels.

In an email dated January 25, 2007, Mr. Puerto expressed dissatisfaction to Mr. Brown regarding Plaintiff's pay structure. (Ex. 5 to Amended Complaint). In June of 2007, Mr. Brown allegedly approached Plaintiff to change the structure, paying him a set "finder's fee" rather than a percentage of Mr. Puerto's sales. Plaintiff refused. According to Plaintiff, Mr. Brown ceased paying commissions on the Puerto Sales Channels after May 2007. According to Defendant, Plaintiff had previously received commissions in excess of what he was owed under the agreement, due to an accounting error.

In early 2010, Rapid Advance transferred its assets to Rapid Financial. Defendant maintains that the asset purchase agreement specifically excludes Plaintiff's contract. Mr. Brown continued to manage Rapid Financial, and Rapid Financial does business under the trade name Rapid Advance. Rapid Financial claims that it is a separate entity from Rapid Advance, and was never a party to the contract under which Plaintiff brings this claim to recover unpaid commissions.

### III. STANDARDS OF REVIEW

#### A. 12(b)(6)

Fed. R. Civ. P.12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509,512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

As the Supreme Court has stated, a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-1951 (2009). Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554,557 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

 **B.** **12(b)(2)**

Under Fed. R. Civ. P. 12(b)(2), a party may bring a motion to dismiss for lack of personal jurisdiction. While the motion may be heard and decided prior to trial, the court also retains the right to make this determination after trial. *See Serras v. First Tennessee Bank National Association*, 875 F2d 1212, 1214 (6th Cir. 1989). If the court decides to rule on the motion prior to trial, "the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Id*. (internal quotations omitted). Regardless of the means of determination, the plaintiff bears the burden of establishing jurisdiction. "If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise, . . . specific facts showing that the court has jurisdiction." *Id*. (internal quotations omitted).

If the court sets out to make a determination based upon written submissions, and such submissions "raise disputed issues of fact or seem to require determinations of credibility, the court retains the power to order an evidentiary hearing and to order discovery of a scope broad enough to prepare the parties for the hearing." *Id.* "In many cases, . . . a district court may find sound reasons to rule, on the basis of written submissions, that the plaintiff has made her *prima facie* showing that the court has personal jurisdiction over a defendant, and to reserve all factual determinations on the issue for trial." *Id.* at 1215.

**IV.   ANALYSIS**

    **A.   Personal Jurisdiction Over Rapid Financial**

"Specific jurisdiction may be exercised under the Michigan long-arm statute where the claim being litigated is one 'arising out of' an act or acts" creating any of the relationships

4

enumerated by the statute. *Neagos v. Valmet-Appleton, Inc.*, 791 F.Supp. 682, 686 (E.D. Mich. 1992). Defendant seeks to dismiss the Amended Complaint because, according to Defendant, Plaintiff's claim does not arise out of any of Rapid Financial's contacts with Michigan. Defendant contends that Plaintiff relies on Michigan's long-arm statute to establish specific jurisdiction. This statute provides that:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships.
>
> (1) The transaction of any business within the state.

M.C.L. § 600.715(1). "In addition to state statutory criteria, due process requires that before a nonresident defendant may be subject to judgment in personam, that he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Neagos*, 791 F.Supp. at 686 *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Defendant argues that Plaintiff's claim does not arise out of any of Rapid Financial's contacts with Michigan, but arises out of a contract with Rapid Advance. Defendant further maintains that much of Plaintiff's Amended Complaint is directed at Rapid Advance, and does not adequately allege jurisdictional contacts with Rapid Financial. As Rapid Financial was not in existence at the time when Plaintiff entered into the contract with Rapid Advance, Defendant argues that Plaintiff's claim could not possibly arise out of the transaction of business with Defendant.

Plaintiff argues that personal jurisdiction exists under theories of both specific and general jurisdiction. While the Complaint references M.C.L. § 600.715, it also states that the

Court may take jurisdiction "due to the transactions and business that RFS conducts in Michigan." (Complaint ¶ 6)  Plaintiff appears to proffer theories of both specific and general jurisdiction.

Plaintiff maintains that Rapid Financial has continuous and systematic business dealings in Michigan.  Plaintiff refers to Rapid Financial's website, which contains a posting about a cash infusion provided to a company in Mt. Pleasant, MI.  According to Plaintiff, this posting, coupled with the contact information for Rapid Advance (the trade name under which Rapid Financial is doing business) indicates an attempt to solicit business specifically in Michigan.  Plaintiff also points to the security interests Rapid Financial has in five Michigan businesses, evidenced by Uniform Commercial Code filings.

The Court agrees with Defendant that the promotion of one transaction between Rapid Advance and a Michigan corporation is insufficient to demonstrate continuous and systematic business activity in Michigan.  Nationwide advertising and the operation of a website are insufficient to establish systematic and continuous contacts with a state.  *See Hi-Tex, Inc. v. TSG, Inc.*, 87 F.Supp.2d 738, 742 (E.D. Mich 2000).  Such a rule would "subject every business entity that advertises in a nationally distributed magazine to personal jurisdiction throughout the U.S." *Id.* at 743.  Similarly, the security interests Rapid Financial now holds in a handful of Michigan corporations, which predate Rapid Financial's existence, would be insufficient to demonstrate continuous and systematic business activity in Michigan.  Plaintiff's argument for general personal jurisdiction fails.

Plaintiff argues specific jurisdiction should apply under a theory of successor liability.  Michigan law provides a narrow doctrine of successor liability.  It is undisputed that Rapid

Financial did not assume liability for the contract involved in this case; in fact, the agreement expressly excluded this contract.

> The basic test is to gear the jurisdiction question to whether, as a substantive matter, the successor corporation may be liable for the obligations of the predecessor. The mere fact that a corporation acquires all the assets of another does not necessarily mean it will be liable for the obligations of its predecessor. If it is liable for the predecessor's obligations, however, it will be subject to long-arm jurisdiction in a suit to enforce the obligation if the predecessor would have been subject to such jurisdiction.

*Neagos*, 791 F.Supp.at 688-689 (internal quotations omitted). Presuming for the purposes of this argument that Rapid Advance and Rapid Financial are two legally distinct corporations, jurisdiction would not attach under a theory of successor liability. "Where, as here, a successor corporation acquires the assets of a predecessor corporation and does not explicitly assume the liabilities of the predecessor, the traditional rule of corporate successor *non-liability* applies." *Starks v. MI Welding Specialists, Inc., et al.*, 477 Mich. 922, 922 (2006). The Michigan Supreme Court has explained that exceptions to the traditional rule are designed to protect injured tort victims and are based on policy considerations that would not extend to a commercial setting. *See id.*

Plaintiff also alleges that Rapid Financial is merely a continuation of Rapid Advance. Plaintiff argues that the corporate veil should be pierced for several reasons in this case. First, Plaintiff cites a continuity of physical location between the two corporations. Plaintiff notes that there has also been a continuity of management, as Jeremy Brown was the President and Chief Operation Officer of Rapid Advance and now serves as the Chief Executive Officer of Rapid Financial. It is undisputed that most or all of Rapid Advance's assets were transferred to Rapid Financial, that Rapid Financial continues in the same business as Rapid Advance, and that Rapid

Financial continues to do business with Rapid Advance's customers.  Finally, Rapid Financial does business as Rapid Advance and uses Rapid Advance's marketing materials, including its website.

Defendant maintains that Plaintiff's claims pertain only to Rapid Advance and not Rapid Financial, which is a separate corporate entity.  Defendant singles out Plaintiff's argument of continuity of management, citing case law that "common directors and officers, alone, will not provide a sufficient basis for disregarding the fiction of those corporations' separate existence." *Maki v. Copper Range Co.*, 328 N.W.2d 430, 433 (Mich. Ct. App. 1983).  This ignores Plaintiff's additional allegations, particularly that Rapid Financial continues to do business as Rapid Advance.

Jurisdiction in this case hinges on whether Plaintiff can successfully pierce the corporate veil.  Piercing the corporate veil is also a substantive claim in the Amended Complaint.  The jurisdictional question is inextricably intertwined with a determination on the merits.  In the case that Rapid Financial is the alter ego of Rapid Advance, certainly the exercise of jurisdiction over Rapid Financial is consistent with the constitutional requirements.  "[A] trial court should not require plaintiffs to mount proof which would, in effect, establish the validity of their claims and their right to the relief sought." *Serras*, 875 F.2d at 1215 (internal quotations omitted).  In this case, judicial resources would be "more efficiently deployed if the court holds but one hearing on the contested facts." *Id.*  Determining the jurisdictional question in this case requires credibility determinations and decisions on disputed facts.  The Court finds that Plaintiff has made a *prima facie* showing of personal jurisdiction over the Defendant, and "reserve[s] all factual determinations on the issue for trial." *See id.*

### B.     Plausibility Requirement of Fed. R. Civ. P. 8(a)

Pursuant to Fed. R. Civ. P. 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Defendant argues that Plaintiff's Amended Complaint falls short of this standard, and fails to do more than provide a "formulaic recitation of the elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949. Defendant argues that Plaintiff's allegations made "upon information and belief" are inadequate, referencing cases in which courts have found allegations made solely upon "information and belief" to be insufficient to meet the requirements of Rule 8(a). However, not all of Plaintiff's claims are "upon information and belief." In fact, Plaintiff's key veil-piercing allegations are not made on such a basis. (Complaint ¶ 66).

Defendant's contention that the asset sale was merely an "arms-length transaction" resulting in the formation of a separate corporation does not render Plaintiff's allegations implausible. The Amended Complaint, and attached exhibits, do more than raise a mere possibility of misconduct, and set forth a plausible claim. Plaintiff's Amended Complaint cannot be dismissed under Rule 8(a).

### C.     Pleading Requirements of Fed. R. Civ. P. 9(b)

Similarly, Defendant argues that Plaintiff does not meet the heightened pleading standard required when addressing fraud. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Again, Defendant refers to Plaintiff's allegations based "upon information and belief." However, as stated above, Plaintiff's Amended Complaint alleges more than this. Plaintiff's Amended

Complaint meets the pleading requirements of Rule 9(b).

V.      CONCLUSION

**IT IS ORDERED** that Defendant Rapid Financial Services, LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) **[Docket No. 5, filed on April 20, 2010]** is **DENIED**.

                                        s/Denise Page Hood
                                        DENISE PAGE HOOD
                                        UNITED STATES DISTRICT JUDGE

Dated:  February 16, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, February 16, 2011, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Relief Case Manager, (313) 234-5165